## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUSHTAQ MOHAMMED, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>FMC CORPORATION, MARK DOUGLAS, PIERRE R. BRONDEAU, and ANDREW D. SANDIFER,<br><br>     Defendants. | Case No.<br><br>**COMPLAINT -- CLASS ACTION**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Mushtaq Mohammed ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by FMC Corporation ("FMC" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by FMC; and (c) review of other publicly available information concerning FMC.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired FMC securities between November 16, 2023 and February 4, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      FMC is an agricultural sciences company which develops, markets, and sells crop protection chemicals including insecticides, herbicides, and fungicides. The Company markets its products through its own sales organization and through alliance partners, independent distributors, and sales representatives. It operates in North America, Latin America, Europe, the Middle East, Africa, and Asia.

3.      On February 4, 2025, after the market closed, FMC released is fourth quarter 2024 financial results, revealing the it had missed its previously announced full fiscal year revenue guidance as well as consensus estimates. The Company explained "growth was below [the Company's] expectations as [it] learned during the quarter that customers in many countries sought to hold significantly less inventory than they have historically." The Company also provided a Full Year 2025 outlook, disclosing that it expects revenue to remain essentially flat due to "weaker

demand in the channel as customers in many countries prioritize holding lower-than-historical levels of inventory."

4.    In an earnings call held the same day, the Company's Chief Executive Officer, Pierre Brondeau ("Brondeau") revealed FMC "need[s] to significantly lower FMC inventory in the channel much beyond what we were expecting." Brondeau explained that the Company had faced pricing competition which it was "unwilling to meet" or adjust to, which led the Company to "walk away" from "sales opportunities." This strategy had backfired as the Company was met with "lower-than-expected demand across most regions as customers lowered the amount of inventory they are willing to hold" to a historical low. As a result, the Company had "high levels of FMC product in the channel" including "elevated channel inventories in some countries in LATAM [Latin America], including Brazil, Asia, including India, as well as Canada and Eastern Europe."

5.    On this news, FMC's stock price fell $18.12, or 33.5%, to close at $35.92 per share on February 5, 2025, on unusually heavy trading volume.

6.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company's channel management initiatives were not progressing as represented; (2) that, faced with pricing pressure, the Company had made the decision not to compete on prices and instead walk away from sales opportunities; (3) that, as a result, the Company had inflated inventory in the channels in "LATAM, including Brazil, Asia, including India, as well as Canada and Eastern Europe;" and (4) that, as a result of the foregoing, Defendants' positive statements about the

Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principle executive offices are located in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

<u>**PARTIES**</u>

12.     Plaintiff Mushtaq Mohammed, as set forth in the accompanying certification, incorporated by reference herein, purchased FMC securities during the Class Period, and suffered

damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant FMC is incorporated under the laws of Delaware with its principal executive offices located in Philadelphia, Pennsylvania. FMC's common stock trades on the New York Stock Exchange ("NYSE") exchange under the symbol "FMC."

14.     Defendant Mark Douglas ("Douglas") was the Company's Chief Executive Officer ("CEO") from December 18, 2019 until June 11, 2024

15.     Defendant Pierre R. Rondeau ("Brondeau") has been the Company's Chief Executive Officer ("CEO") since June 11, 2024.

16.     Defendant Andrew D. Sandifer ("Sandifer") was the Company's Chief Financial Officer ("CFO") at all relevant times.

17.     Defendants Douglas, Brondeau, and Sandifer (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     FMC is an agricultural sciences company which develops, markets, and sells crop protection chemicals including insecticides, herbicides, and fungicides. The Company markets its products through its own sales organization and through alliance partners, independent distributors, and sales representatives. It operates in North America, Latin America, Europe, the Middle East, Africa, and Asia.

### Materially False and Misleading

### Statements Issued During the Class Period

19.     The Class Period begins on  November 16, 2023. On that day, FMC issued a press release previewing its long-range strategic growth plan and preliminary full year 2024 outlook to be discussed at the Company's Investor Day, held at its corporate headquarters on the same date. The press release stated in relevant part: [1]

**FMC Corporation to introduce strategic growth plan at Investor Day, details cost restructuring and provides preliminary 2024 outlook**

**2024 Full- Year Preliminary Outlook**

•***Revenue of $4.65 billion to $4.85 billion, reflecting 3 percent increase midpoint to midpoint from latest 2023 guidance***

•Adjusted EBITDA of $1.025 billion to $1.125 billion, reflecting 8 percent increase midpoint to midpoint from latest 2023 guidance

•$50 million to $75 million of adjusted EBITDA contribution in 2024 from restructuring actions with approximately $150 million of run-rate savings by the end of 2025

•Adjusted earnings per share expected to grow faster than adjusted EBITDA in 2024

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

•Return on invested capital over 10 percent

•Free cash flow conversion of over 100 percent

•Expect to end 2024 approaching historically normal leverage metrics

20.    On the same date, the FMC hosted its 2023 Investor Day, during which the Company provided a Plenary Presentation which purported to detail the manner in which the Company was addressing and managing the Company's channel volumes, including "***Prioritizing sales of existing inventory***", and "***Utilizing variable pricing based on local market dynamics.***" The presentation stated the following, in relevant part:



21.    On February 5, 2024, FMC issued a press release announcing the financial results for the three and twelve months ended December 31, 2023. The press release reported the following, in relevant part:

**FMC Corporation announces fourth quarter and full-year 2023 results
within guidance ranges, provides 2024 outlook**

\*            \*            \*

**Full-Year 2024 Outlook**

6

•***Revenue of $4.50 to $4.70 billion, reflecting 2.5 percent growth at the midpoint***

•Adjusted EBITDA of $900 million to $1.05 billion, essentially flat to prior year at the midpoint

•Restructuring fully underway and expect to receive $50 to $75 million of adjusted EBITDA benefit

•Adjusted earnings per diluted share of $3.23 to $4.41, reflecting 1 percent growth at the midpoint

•Free cash flow is expected to be in the range of $400 to $600 million, reflecting greater than 100 percent cash flow conversion at the midpoint

22.     On February 5, 2024, FMC submitted its annual report for the fiscal year ended December 31, 2023 on a Form 10-K filed with the SEC, affirming the previously reported financial results. The annual report further stated the following, in relevant part, regarding the manner in which the Company was purportedly addressing and managing channel volumes:

***In response to the unprecedented downturn in the global crop protection market that resulted in severe channel destocking, we initiated the Project Focus global restructuring plan. This program is designed to right-size our cost base and optimize our footprint and organizational structure with a focus on driving significant cost improvement and productivity.*** As noted in the section titled "Results of Operations," we expect to incur approximately $180 to $215 million of pre-tax restructuring charges in total over the life of the program, which includes $80 to $90 million of non-cash asset write-off charges. Included within the estimated charges are costs needed to transition various activities to Switzerland in order to realize the benefits associated with the recently awarded tax incentives of approximately $1.4 billion granted to the Company's Swiss subsidiaries. The estimate also includes, but is not limited to, employee severance and related benefit costs, and consulting and other professional service fees. We may incur additional asset write-off charges, inventory and other working capital charges, primarily associated with the liquidation of excess inventory in select markets, relocation charges, and contract termination charges in connection with Project Focus and will provide an estimate of charges when known. The projected restructuring spending for 2024 includes $70 million to $90 million related to the Project Focus activities which will be presented within Legacy and transformation as part of our Free Cash Flow Reconciliation in 2024. The Company expects Project Focus to deliver $50 to $75 million in contributions to adjusted EBITDA in 2024. The targeted annual run-rate savings is $150 million or more by the end of 2025 from the program once fully implemented, which is expected by the end of 2025.

23.    On May 6, 2024, FMC issued a press release announcing the financial results for the three months ended March 31, 2024. The press release reported the following, in relevant part:

### FMC Corporation delivers first quarter earnings at higher end of guidance range, maintains full year outlook

*Significant improvement in first quarter cash from operations up $708 million versus prior year period*

**First Quarter 2024 Highlights**

• Revenue of $918 million, down 32 percent versus Q1 2023 and down 31 percent organically

• Consolidated GAAP net loss of $3 million, down 102 percent versus Q1 2023

• Adjusted EBITDA of $161 million, down 56 percent versus Q1 2023

• Consolidated GAAP loss of $0.02 per diluted share, down 101 percent versus Q1 2023

• Adjusted earnings per diluted share of $0.36, down 80 percent versus Q1 2023

• GAAP cash from operations of negative $143 million, an improvement of $708 million versus Q1 2023

• Free cash flow of negative $188 million, an improvement of $727 million versus Q1 2023

• Strong contribution from new product introductions (NPI3)

**Full-Year Outlook**

• ***Maintains revenue outlook of $4.50 billion to $4.70 billion, reflecting 2.5 percent growth at the midpoint versus 2023***

• Maintains adjusted EBITDA outlook of $900 million to $1.05 billion, essentially flat at the midpoint versus 2023

• Adjusted earnings per diluted share outlook unchanged at $3.23 to $4.41, an increase of 1 percent at the midpoint versus 2023

• Restructuring continues, and company maintains target of $50 million to $75 million of adjusted EBITDA net benefit

• Free cash flow outlook of $400 million to $600 million is unchanged

24.     On May 7, 2024, the Company submitted its quarterly report for the period ended March 31, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results and providing the following commentary on the Company's finanical results, in relevant part:

**Three Months Ended March 31, 2024 vs. 2023**

<u>North America:</u> Revenue decreased approximately 48 percent year-over-year ***almost entirely due to a decline in volumes against a record-breaking prior-year period.*** Fungicide sales out-performed the portfolio with growth from new products Xyway® and Adastrio® fungicide.

\*               \*               \*

<u>EMEA</u>: Revenue decreased approximately 20 percent (down 17 percent organically) compared to the prior year period as a result of the decline in volumes caused in part by registration removals and rationalization of some lower margin products. Pricing actions in the region were a slight tailwind during the period.

25.     On July 31, 2024, FMC issued a press release announcing the financial results for the three months ended June 30, 2024.  The press release reported the following, in relevant part:

**FMC Corporation announces second quarter earnings at higher end of guidance range; updates full-year outlook**

*Volume growth and restructuring savings drive year-over-year earnings improvement*

**Second Quarter 2024 Highlights**

•***Revenue of $1.04 billion, up 2 percent versus Q2 2023 and up 4 percent organically***

•Consolidated GAAP net income of $295 million

•Adjusted EBITDA of $202 million, up 8 percent versus Q2 2023

•Consolidated GAAP income of $2.35 per diluted share

•Adjusted earnings per diluted share of $0.63, up 26 percent versus Q2 2023

•GAAP cash from operations of $292 million, an increase of $161 million versus Q2 2023

•Free cash flow of $280 million, an improvement of $187 million versus Q2 2023

**Full-Year Outlook**

•***Updates revenue outlook to range of $4.30 billion to $4.50 billion, reflecting a 2 percent decline at the midpoint versus 2023***

•Reduces adjusted EBITDA range to $880 million to $940 million, a decline of 7 percent at the midpoint versus 2023

•Lowers adjusted earnings per diluted share outlook to a range of $3.02 to $3.64, a decline of 12 percent at the midpoint versus 2023

•Increases restructuring benefit target to a range of $75 million to $100 million of adjusted EBITDA net benefit

•Updates free cash flow range to $400 million to $500 million

26.     On August 1, 2024, the Company submitted its quarterly report for the period ended June 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results and providing the following commentary on the Company's finanical results, in relevant part:

**Three Months Ended June 30, 2024 vs. 2023**

<u>North America:</u> Revenue increased approximately 24 percent year-over-year primarily due to higher volumes, specifically in the herbicides category. New product sales also grew during the period due to strong performance of new diamide insecticide formulations and fluindapyr based fungicides.

<u>Latin America:</u> Revenue increased approximately 14 percent versus the second quarter of 2023 (up 15 percent organically) driven primarily by volume improvement, almost entirely in Brazil, during the period. Branded diamides and new products also reported higher sales versus prior year aided by recently launched Premio® Star and Coragen® Evo insecticides. Pricing pressure due to competition in the market as well as one-time customer incentives partially offset the volume increase.

27.     On October 29, 2024, FMC Corporation issued a press release announcing the financial results for the three and nine months ended September 30, 2024.  The press release reported the following, in relevant part:

**FMC Corporation reports strong growth in third quarter, confirms full-year outlook adjusted for expected sale of GSS business**

*Volume growth and higher cost savings led to earnings above the high end of guidance range*

**Third Quarter 2024 Highlights**

•***Revenue of $1.07 billion, an increase of 9 percent versus Q3 2023 and up 12 percent organically***

•Consolidated GAAP net income of $66 million, up $70 million from a net loss of $4 million in Q3 2023

•Adjusted EBITDA of $201 million, up 15 percent versus Q3 2023

•Consolidated GAAP net income of $0.52 per diluted share, up $0.55 from a net loss of $0.03 per diluted share in Q3 2023

•Adjusted earnings per diluted share of $0.69, up 57 percent versus Q3 2023

•GAAP Cash from operations of $160 million with free cash flow of $132 million

**Full-Year Outlook**

•***Revenue outlook of $4.33 billion to $4.44 billion, reflecting a 2 percent decline at the midpoint versus 2023; reduced $20 million for loss of contribution from Global Specialty Solutions (GSS) business***

•Adjusted EBITDA outlook range of $885 million to $915 million, reflecting an 8 percent decline at the midpoint versus 2023; reduced $10 million for loss of contribution from GSS business

•Adjusted earnings per diluted share outlook range of $3.16 to $3.52, reflecting a 12 percent decrease at the midpoint versus 2023

•Increases target restructuring savings range to $125 million to $150 million of adjusted EBITDA net benefit

•Free cash flow outlook range unchanged at $400 million to $500 million

28.     On October 30, 2024, the Company submitted its quarterly report for the period ended September 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial result and providing the following commentary on the Company's finanical results, in relevant part:

**Three Months Ended September 30, 2024 vs. 2023**

<u>North America</u>: Revenue increased approximately 48 percent year-over-year driven by strong volume growth as diamide partners increased orders and branded sales grew due to improved channel inventory levels.

<u>Latin America</u>: Revenue increased approximately 8 percent versus the third quarter of 2023 (up 15 percent organically) driven by volume improvement during the period primarily in Brazil, including strong demand for ONSUVA® fungicide — a fluindapyr-based formulation. Pricing challenges in Brazil and Argentina partially offset the increase in volumes during the period.

<u>EMEA</u>: Revenue decreased approximately 7 percent (down 6 percent organically) compared to the prior year period primarily due to expected registration losses.

29.    The above statements identified in ¶¶ 19-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors:  (1) the Company's channel management initiatives were not progressing as represented; (2) that, faced with pricing pressure, the Company had made the decision not to compete on prices and instead walk away from sales opportunities; (3) that, as a result, the Company had inflated inventory in the channels in "LATAM, including Brazil, Asia, including India, as well as Canada and Eastern Europe;" and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

30.    On February 4, 2025, after the market closed, FMC released is fourth quarter 2024 financial results in a press release, revealing the it had missed its previously announced full fiscal year revenue guidance as well as consensus estimates. The Company explained "growth was below [the Company's] expectations as [it] learned during the quarter that customers in many countries sought to hold significantly less inventory than they have historically." The Company also provided a Full Year 2025 outlook, disclosing that it expects revenue to remain essentially flat due

to "weaker demand in the channel as customers in many countries prioritize holding lower-than-historical levels of inventory." Specifically, the press release stated, in relevant part:

**FMC Corporation announces 2024 fourth quarter and full year results, provides 2025 outlook**

*Fourth quarter results benefited from 7 percent sales growth and continued cost favorability; Company reported strong year of cash generation with over $1 billion improvement in Cash from Operations*

\*        \*        \*

**Full-Year 2024 Highlights**

•Revenue of $4.25 billion lower by 5 percent versus prior year and down 3 percent organically

•Consolidated GAAP net income of $342 million, down 74 percent versus 2023

•Adjusted EBITDA of $903 million, down 8 percent versus 2023

•Consolidated GAAP earnings of $2.72 per diluted share, down 74 percent versus 2023

•Adjusted earnings of $3.48 per diluted share, down 8 percent versus 2023

•Consolidated GAAP cash flow from operations of $737 million, an increase of $1.04 billion versus 2023

•Free cash flow of $614 million, an increase of $1.14 billion versus 2023

\*        \*        \*

"***While we saw a good increase in volume, the growth was below our expectations as we learned during the quarter that customers in many countries sought to hold significantly less inventory than they have historically.*** This dynamic, along with more pronounced FX impacts, acted as a headwind to further growth. Over seventy-five percent of our sales growth came from our growth portfolio. This, together with continued cost discipline, was a key factor in delivering a strong year-over-year increase in adjusted EBITDA, which was above our guidance midpoint."

\*        \*        \*

**Full Year 2025 Outlook**

Full year 2025 revenue is forecasted to be in the range of $4.15 billion to $4.35 billion, essentially flat at the midpoint and an increase of 3 percent after adjusting

for approximately $110 million of lost sales from divestiture of the GSS business. Volume is expected to improve as increases in growth portfolio sales more than offset weaker demand in the channel as customers in many countries prioritize holding lower-than-historical levels of inventory. Price is expected to decline in the low-to-mid-single digits with the vast majority driven by price adjustments in certain "cost-plus" contracts with certain diamide partners as a result of lower manufacturing costs. FX is expected to be a low-to-mid-single digit headwind.

31.     In an earnings call held the same day, the Company's CEO, Defendant Brondeau revealed FMC "need[s] to significantly lower FMC inventory in the channel much beyond what we were expecting." Brondeau explained that the Company had  faced pricing competition which it was "unwilling to meet" or adjust to,  which led the Company to "walk away" from "sales opportunities." This strategy had backfired as the Company was met with "lower-than-expected demand across most regions as customers lowered the amount of inventory they are willing to hold" to a historical low. As a result, the Company had "high levels of FMC product in the channel" including "elevated channel inventories in some countries in LATAM [Latin America], including Brazil, Asia, including India, as well as Canada and Eastern Europe." Specifically, during his prepared statements, Brondeau offered the following commentary, in relevant part:

> [A]fter eight months in a row, I have modified my view of what needs to be done for FMC to fully benefit from the market upturn when it happens and the quality of the portfolio. ***The company needs a stronger reset than what I thought initially.*** We learned a lot in the fourth quarter and it has become clear that we need to take more aggressive actions to reposition FMC. ***Above all, we need to significantly lower FMC inventory in the channel much beyond what we were expecting.***
>
> *                *                *
>
> ***LATAM sales were the most disappointing as high competition led to prices, and terms that we were unwilling to meet, which in addition to credit risks led us to pass on some sales.*** As we were confident that we would meet our EBITDA and EPS targets, we have the flexibility to ***walk away from unattractive sales opportunities. Additionally, we saw lower-than-expected demand across most regions as customers lowered the amount of inventory they are willing to hold versus historical level.***
>
> While we did anticipate customers would hold less inventory in an environment of higher interest rate, lower commodity prices, and the perception of secure supply,

we were not expecting behavior to change to such a degree. Given the above assumptions and the current high levels of FMC product in the channel, *we now believe we have elevated channel inventories in some countries in LATAM, including Brazil, Asia, including India, as well as Canada and Eastern Europe.*

32.     On this news, FMC's stock price fell $18.12, or 33.5%, to close at $35.92 per share on February 5, 2025, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired FMC securities between November 16, 2023 and February 4, 2025, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FMC's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of FMC shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by FMC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of FMC; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.    The market for FMC's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, FMC's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired FMC's securities relying upon the integrity of the market price of the Company's securities and market information relating to FMC, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of FMC's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about FMC's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about FMC's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased FMC's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding FMC, their control over, and/or receipt and/or modification of FMC's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning FMC, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for FMC's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, FMC's securities traded at artificially inflated prices during the Class Period.  On May 10, 2024 the Company's share price closed at a Class Period high of $67.53 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of FMC's securities and market information relating to FMC, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of FMC's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages

sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about FMC's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of FMC and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.    At all relevant times, the market for FMC's securities was an efficient market for the following reasons, among others:

(a)    FMC shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, FMC filed periodic public reports with the SEC and/or the NYSE;

(c)    FMC regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    FMC was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for FMC's securities promptly digested current information regarding FMC from all publicly available sources and reflected such information in FMC's share price. Under these circumstances, all purchasers of FMC's securities during the Class Period suffered similar injury through their purchase of FMC's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of FMC who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

51.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase FMC's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for FMC's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about FMC's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of FMC's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about FMC and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing FMC's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of FMC's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired FMC's securities during the Class Period at artificially high prices and were damaged thereby.

59.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that FMC was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their FMC securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

62.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.    Individual Defendants acted as controlling persons of FMC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff

contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, FMC and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:   February 13, 2025                **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Lee Albert*
Lee Albert (PA ID #046852)
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lalbert@glancylaw.com

Charles H. Linehan (pro hac vice forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com


**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Mushtaq Mohammed*

**SWORN CERTIFICATION OF PLAINTIFF**

**FMC CORPORATION SECURITIES LITIGATION**

I, Mushtaq Mohammed, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the FMC Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in FMC Corporation securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

2/12/2025

_____
Date

_____
Mushtaq Mohammed

**Mushtaq Mohammed's Transactions in FMC Corporation (FMC)**

**Account 1**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 1/2/2025 | Bought | 100 | $49.0850 |

**Account 2**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/18/2024 | Bought | 38 | $50.1200 |

**Account 3**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/30/2024 | Bought | 210 | $47.7200 |
| 1/2/2025 | Bought | 315 | $49.0902 |

**Account 4**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 1/2/2025 | Bought | 20 | $49.0999 |

**Account 5**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/30/2024 | Bought | 11 | $47.7300 |
| 12/31/2024 | Sold | -11 | $48.3600 |