**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MUSHTAQ MOHAMMED, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FMC CORPORATION, MARK DOUGLAS, PIERRE R. BRONDEAU, and ANDREW D. SANDIFER,<br><br>Defendants. | Civ. Action No. 2:25-cv-00771-GAW |
| MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM AND MACOMB COUNTY RETIREMENT HEALTH CARE FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FMC CORPORATION, MARK A. DOUGLAS, ANDREW D. SANDIFER, AND PIERRE R. BRONDEAU,<br><br>Defendants. | Civ. Action No. 2:25-cv-00815-GAW |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF TEAMSTERS LOCAL 710 PENSION FUND, MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM, AND MACOMB COUNTY RETIREE HEALTH CARE FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF <u>COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT .......................................................................................................................... 4

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...................................... 4

II.   THE PENSION FUNDS SHOULD BE APPOINTED AS LEAD PLAINTIFF ............... 4

     A.   The Pension Funds' Motion Is Timely ................................................................. 5

     B.   The Pension Funds Have the Largest Financial Interest......................................... 6

     C.   The Pension Funds Are Typical and Adequate to Represent the Putative
         Class ................................................................................................................... 6

     D.   The Pension Funds Are Precisely the Type of Lead Plaintiff Congress
         Envisioned When It Passed the PSLRA ............................................................... 8

III.  THE PENSION FUNDS' SELECTION OF COUNSEL MERITS APPROVAL ........... 10

IV.   CONCLUSION............................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bear Stearns Co., Inc. Sec., Derivative, & ERISA Litig.*,
 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ....................................................................1

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001)............................................................................5, 6, 7, 10

*Christian v. BT Grp. PLC*,
 2017 WL 3705804 (D.N.J. Aug. 28, 2017) .................................................................8

*Gaer v. Educ. Mgmt. Corp.*,
 2010 WL 4687791 (W.D. Pa. Nov. 10, 2010) .....................................................6, 7, 8

*Garcia v. Intelligroup, Inc.*,
 2005 WL 6074922 (D.N.J. Aug. 10, 2005) .................................................................4

*Himes v. Five Below, Inc.*,
 2024 WL 4596235 (E.D. Pa. Oct. 28, 2024).............................................................9, 10

*In re Vicuron Pharms., Inc. Sec. Litig.*,
 225 F.R.D. 508 (E.D. Pa. 2004)...................................................................................8

**Rules & Statutes**

Fed. R. Civ. P. 23............................................................................................... *passim*

Fed. R. Civ. P. 42(a) .................................................................................................4

15 U.S.C. § 78u-4 *et. seq*. .................................................................................. *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 No. 04-cv-8141 (S.D.N.Y.)....................................................................................10, 11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
 No. 08-md-1963 (S.D.N.Y.) ......................................................................................11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
 No. 10-cv-0302 (C.D. Cal.) .......................................................................................11

*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*,
 No. 08-cv-5310 (S.D.N.Y.).......................................................................................11

*Rubin v. MF Global, Ltd.*,
    No. 1:08-cv-02233 (S.D.N.Y.)..............................................................................................11

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
    No. 09-md-2027 (S.D.N.Y.) ...............................................................................................11

*In re Wells Fargo & Company Sec. Litig.*
    No. 20-cv-04494 (S.D.N.Y.)...............................................................................................11

## Other Authorities

H.R. Conf. Rep. No. 104-369 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730 ...................................8

**PRELIMINARY STATEMENT**

Proposed Lead Plaintiff Teamsters Local 710 Pension Fund ("Teamsters 710"), Macomb County Employees' Retirement System and Macomb County Retiree Health Care Fund (collectively, "Macomb County" and together with Teamsters 710, the "Pension Funds"), pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), respectfully submits this memorandum of law in support of their motion ("Motion") for consolidation of the above-captioned related actions ("the Related Actions"), appointment as Lead Plaintiff in the Related Actions, and approval of its selection of Labaton Keller Sucharow LLP ("Labaton") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the Class. The Related Actions, which allege that Defendants FMC Corporation, ("FMC" or the "Company") and certain of its senior executives (collectively "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, have been brought on behalf of all persons who purchased or otherwise acquired FMC securities between November 16, 2023, and February 4, 2025, both dates inclusive (the "Class Period"), who were damaged thereby (the "Class").[1]

Under the PSLRA, this Court is instructed to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C.

---

[1] The Class Period as defined herein is the longest class period alleged in the Related Actions. *See, e.g.*, *In re Bear Stearns Co., Inc. Sec., Derivative, & ERISA Litig.*, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (noting that when initial complaints allege multiple class periods, "the lead plaintiff analysis should utilize the most inclusive class period because 'it encompasses more potential class members'") (citation omitted).

§ 78u-4(a)(3)(B)(iii)(I).  The Pension Funds respectfully submit that they should be appointed

Lead Plaintiff because they have the "largest financial interest" in this litigation and have made

the requisite showing of typicality and adequacy required by the standards of the PSLRA.

As set forth herein, the Pension Funds have a financial interest of *$1,283,618* in the

outcome of the Related Actions.[2]  As such, the Pension Funds possess a substantial financial

interest in the relief sought in this litigation—an interest believed to be greater than that of any

competing movant.  In addition to asserting the largest financial interest, the Pension Funds readily

satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members

of the Class and they will fairly and adequately represent the interests of the Class.  Finally, the

adequacy of the Pension Funds has been demonstrated through their selection of Labaton and

Cohen Milstein, law firms with substantial experience in successfully prosecuting securities class

actions, to serve as Lead Counsel for the Class.

Accordingly, the Pension Funds respectfully request that the Court appoint them as Lead

Plaintiff and otherwise grant this motion.

**FACTUAL BACKGROUND[3]**

FMC is an agricultural sciences company based in Philadelphia, Pennsylvania.  The

Company manufactures insecticides and other crop protection products.  FMC sells these products

to wholesale distributors located in North America, Latin America, Europe, and Asia.  The

---

[2] A Copy of the PSLRA-required certifications of the Pension Funds are attached as Exhibit A to the Declaration of Christina D. Saler ("Saler Decl."), which sets forth all relevant transactions in FMC securities during the Class Period.  In addition, a chart reflecting the calculation of the Pension Funds' financial interest in the outcome of this litigation is attached as Exhibit B to the Saler Decl.

[3] The factual allegations contained herein are drawn from the complaints filed in each of the Related Actions.

2

Company's distributors sell FMC products out of their inventories to retailers who ultimately sell the products to farmers.

The Related Actions allege that throughout the Class Period, Defendants misled FMC investors by failing to disclose that: (a) Project Focus, a strategic restructuring plan, was not succeeding in its goal of significantly lowering FMC inventory in the distribution channel; (b) FMC's channel inventories were not rebalancing or normalizing, and in fact were getting worse; (c) Project Focus was lagging in its goal of accelerating manufacturing cost reductions; (d) FMC's cost-plus pricing arrangements with key distributors would significantly lower FMC's revenues and profits in the near-term; (e) FMC's risk disclosures were materially false and misleading because they characterized adverse facts that had already materialized as mere possibilities; and (f) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading or lacked a reasonable basis.

The truth began to emerge on February 4, 2025, when FMC reported fourth quarter 2024 revenue which missed consensus estimates by $90 million while disclosing that "growth was below [the Company's] expectations as [it] learned during the quarter that customers in many countries sought to hold significantly less inventory than they have historically." The Company also issued a disappointing 2025 financial outlook due to "weaker demand in the channel as customers in many countries prioritize holding lower-than-historical levels of inventory." On this news, FMC's stock price dropped $18.12 per share, or 33.5 percent, to close at $35.92 per share on February 5, 2025.

As a result of Defendants' allegedly wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Pension Funds and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4 (a)(3)(B)(ii).   The Court may consolidate actions if they "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  Here, the Related Actions assert substantially similar claims on behalf of nearly the same putative class against the same defendants. Accordingly, the Court should consolidate the Related Actions.  15 U.S.C. § 78u-4 (a)(3)(B)(ii); *Garcia v. Intelligroup, Inc.*, 2005 WL 6074922, at *2 (D.N.J. Aug. 10, 2005) (consolidating cases with "the same or similar Class Period").

### II.    THE PENSION FUNDS SHOULD BE APPOINTED AS LEAD PLAINTIFF

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).   First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

4

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as Lead Plaintiff, (ii) has the largest financial interest in the relief sought by the class, and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cendant*, 264 F.3d at 222.

For the reasons discussed herein, the Pension Funds meet these requirements and should therefore be appointed as Lead Plaintiff.

### A.    The Pension Funds' Motion Is Timely

The Pension Funds filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first-filed of the Related Actions caused notice regarding the pendency of this case to be published on *Business Wire,* a widely-circulated, national, business-oriented news wire service, on February 13, 2025, establishing an April 14, 2025 deadline for lead plaintiff motions. *See* Notice, Saler Decl., Ex. C. Then, on February 14, 2025, Macomb County, the plaintiff in the second-filed of the Related Actions, published notice reiterating the April 14, 2025 deadline. *Id.* Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff on or before April 14, 2025. The Pension Funds filed their motion seeking appointment as Lead Plaintiff within this deadline and thus have satisfied the procedural requirements of the PSLRA.

**B.      The Pension Funds Have the Largest Financial Interest**

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Cendant*, 264 F.3d at 263.  At the time of this filing, the Pension Funds believe that they have the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, are presumed to be the "most adequate plaintiff."  The Pension Funds lost ***$1,283,618*** due to Defendants' fraud.  *See* Saler Decl., Ex. B; *see also Gaer v. Educ. Mgmt. Corp.*, 2010 WL 4687791, at *3 (W.D. Pa. Nov. 10, 2010) (finding movant with largest loss to have the largest financial interest).  To the best of the Pension Funds' knowledge, there is no other applicant seeking Lead Plaintiff appointment asserting a larger financial interest in the litigation.  Consequently, the Pension Funds have the "largest financial interest in the relief sought by the Class."  Thus, the Pension Funds satisfy the second PSLRA requirement—the largest financial interest—to be appointed as Lead Plaintiff for the Class.

**C.      The Pension Funds Are Typical and Adequate to Represent the Putative Class**

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc).  This inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy" under Rule 23.  *Cendant*, 264 F.3d at 263.  As set forth below, the Pension Funds have satisfied their preliminary showing that they are both typical and adequate under Rule 23.

When making the typicality determination, the court "should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other

class members will perforce be based.'" *Cendant*, 264 F.3d at 265 (alteration in original) (citation omitted).  Courts find lead plaintiff movants typical where their "claims arise from the same series of events and are based on the same legal theories as the claims of all class members." *Educ. Mgmt. Corp.*, 2010 WL 4687791, at *3.  The adequacy requirement is satisfied where "no potential conflicts exist with other class members, [the movant's] interests are aligned with those of the class and it has shown its willingness to vigorously prosecute this action by retaining qualified and experienced securities class action attorneys to represent the class." *Id.*  The Pension Funds have satisfied both requirements.

Here, the Pension Funds, like other class members: (i) purchased FMC securities during the Class Period; (ii) were adversely affected by Defendants' allegedly false and misleading statements; and (iii) suffered damages when the truth became known.  Thus, the Pension Funds' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events and are based on the same legal theories.

Further, the Pension Funds are also highly incentivized to maximize the recovery for putative Class members harmed by Defendants' alleged wrongdoing based on, among other things, the substantial losses they suffered.  Moreover, the Pension Funds are not aware of any conflict between themselves and the putative class members.  The Pension Funds have demonstrated their adequacy by signing sworn certifications evidencing their ability and willingness to serve as, and to assume the responsibilities of, Lead Plaintiff.  *See* Saler Decl., Ex. A.  Finally, as set forth in more detail below, the Pension Funds have further demonstrated their adequacy by retaining Labaton and Cohen Milstein as proposed Lead Counsel, law firms with vast experience prosecuting securities class actions.  Therefore, the Pension Funds satisfy both the typicality and adequacy requirements.

**D.      The Pension Funds Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA**

In addition to satisfying the requirements of Rule 23, the Pension Funds—sophisticated institutional investors—are precisely the type of investor Congress, through the enactment of the PSLRA, encouraged to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

To this end, many courts, including courts in this Circuit, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) (appointing an institutional investor group lead plaintiff in part because "the PSLRA favors institutional investors seeking to serve as lead plaintiff"); *see Educ. Mgmt. Corp.*, 2010 WL 4687791, at *4 (noting that "a sophisticated institutional investor," is "the paradigmatic lead plaintiff envisioned by Congress"); *see also Christian v. BT Grp. PLC*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (appointing an institutional investor lead plaintiff and noting "as other courts have, that the [institutional lead plaintiff movant] is the kind of institutional investor that Congress specifically intended to encourage to serve as lead plaintiff when it enacted the PSLRA").

8

The Pension Funds are well-versed in the obligations the PSLRA imposes on a lead plaintiff to oversee and supervise the litigation separate and apart from counsel and have submitted sworn certifications as to their willingness and ability to fulfill those duties here. *See* Certifications, Saler Decl., Ex. A. Further, the Pension Funds are sophisticated institutional investors that have substantial experience successfully serving as lead plaintiff in class actions under the federal securities laws. *See* Saler Decl., Ex. D ¶ 7 (explaining that each of the Pension Funds has previously served as lead plaintiff alongside other institutions and has previously coordinated in filing a lead plaintiff motion); *see also Himes v. Five Below, Inc.*, 2024 WL 4596235, at *3 n.4 (E.D. Pa. Oct. 28, 2024) (appointing a group of institutional investors lead plaintiff that "have experience working with other institutional investors in group lead plaintiff settings"). The Pension Funds have demonstrated their willingness, resources, and ability to fulfill a lead plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of the Action. *Id.* ¶¶ 2-15.

Moreover, the Pension Funds have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. For instance, Macomb County filed one of the Related Actions to protect their claims and the claims of similarly situated investors. *Id.* ¶ 4. Further, as part of their effort to formalize their oversight of the Action and before seeking appointment as Lead Plaintiff, representatives of the Pension Funds held a conference call on April 11, 2025, in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the Action, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the Pension Funds have taken and will take to ensure that the Class' claims will be zealously and efficiently litigated. *Id.* ¶ 11; *see Five Below, Inc.*, 2024 WL 4596235,

9

at *3 n.4 (appointing a group of institutional investors as lead plaintiff that "have established procedures to enable timely joint decision making").

Further, while the Pension Funds appreciate that attorneys' fees awarded in the Action, if any, will be set by the Court, they take very seriously their obligation as Lead Plaintiff and plan to coordinate to ensure that any fees requested by attorneys are reasonable and consistent with those granted in this District. Saler Decl., Ex. D ¶ 14. Through these measures and others, the Pension Funds have sought to ensure the Class will receive the best possible representation. In sum, the Pension Funds have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. In other words, the Pension Funds are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.

Accordingly, the Pension Funds have the sophistication and resources necessary to effectively litigate this matter and supervise proposed Lead Counsel.

## III.    THE PENSION FUNDS' SELECTION OF COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 274. Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Pension Funds have selected Labaton and Cohen Milstein to pursue this litigation on their behalf and have retained the firms as the Class's proposed Lead Counsel in the event they are appointed as Lead Plaintiff. Labaton has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. For example, Labaton served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141

10

(S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the firm served as co-lead counsel.  Labaton also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members.  Labaton presently serves as lead counsel in several significant investor class actions.  *See* Labaton Firm Resume, Saler Decl., Ex. E.

Likewise, Cohen Milstein is well qualified to represent the Class as Lead Counsel.  A few of Cohen Milstein's notable recoveries include: a $1 billion settlement in a securities fraud class action lawsuit in *In re Wells Fargo & Company Securities Litigation*, No. 20-cv-04494 (S.D.N.Y.); a $500 million settlement in *Maine State Retirement System v. Countrywide Financial Corporation*, No. 10-cv-0302 (C.D. Cal.); a $275 million settlement in *New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-5310 (S.D.N.Y.); and a $90 million settlement in *Rubin v. MF Global, Ltd.*, No. 1:08-cv-02233 (S.D.N.Y.), which it litigated together with Labaton.  Cohen Milstein presently serves as lead counsel in several significant investor class actions.  S*ee* Cohen Milstein Firm Resume, Saler Decl., Ex. F.

Accordingly, the Court may be assured that, by granting the Pension Funds' motion, the Class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

For the foregoing reasons, the Pension Funds respectfully request that the Court grant their Motion and enter an Order: (i) consolidating the Related Actions; (ii) appointing the Pension Funds as lead plaintiff, (iii) approving their selection of Labaton and Cohen Milstein as Lead Counsel for the Class, and (iv) granting such other relief as the Court may deem just and proper.

DATED:  April 14, 2025

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Casey M. Preston*
Christina D. Saler
Casey M. Preston
100 N. 18th St.
Suite 1820
Philadelphia, Pennsylvania 19103
Telephone: (267) 479-5700
csaler@cohenmilstein.com
cpreston@cohenmilstein.com

Carol V. Gilden (*pro hac vice* application forthcoming)
190 S. LaSalle St.
Suite 1705
Chicago, Illinois 60603
Telephone: (312) 357-0370
cgilden@cohenmilstein.com

Steven J. Toll (*pro hac vice* application forthcoming)
S. Douglas Bunch (*pro hac vice* application forthcoming)
Emmy Wydman (*pro hac vice* application forthcoming)
1100 New York Ave. NW
Suite 800, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com
ewydman@cohenmilstein.com

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (*pro hac vice* application forthcoming)
Guillaume Buell (*pro hac vice* application forthcoming)
Connor C. Boehme (*pro hac vice* application forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com

12

gbuell@labaton.com
cboehme@labaton.com

*Counsel for the Pension Funds and Proposed Lead
Counsel for the Proposed Class*

**VANOVERBEKE MICHAUD & TIMMONY
P.C.**
Thomas C. Michaud
Aaron L. Castle
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
tmichaud@vmtlaw.com
acastle@vmtlaw.com

*Additional Counsel for Macomb County Employees'
Retirement System and Macomb County Retiree
Health Care Fund*

13

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 14, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of counsel of record designated on the CM/ECF system to receive such filings.

*/s/ Casey M. Preston*
Casey M. Preston